**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IRENE FLORES-MENDOZA,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **CIVIL NO. SA-26-CV-5280-OLG** |
| | § | |
| **MARKWAYNE MULLIN *et al.*,** | § | |
| **Respondents.** | § | |

**ORDER**

Pending before the Court is Petitioner Irene Flores-Mendoza's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Dkt. No. 1), to which Respondents filed a response (Dkt. No. 4), and Petitioner filed a reply (Dkt. No. 5). After careful consideration, the Petition (Dkt. No. 1) is **GRANTED** as set forth below.

## I. BACKGROUND

The material facts of this case are not in dispute. Petitioner is a native of El Salvador, who entered the United States in 2019. *See* Dkt. Nos. 1 at 6–7; 4 at 2; 4-1 at 2. On February 26, 2025, she was ordered removed to El Salvador but granted withholding of removal. *See* Dkt. No. 4 at 2; 4-1 at 3. Later that year, Petitioner was granted habeas relief and released on an Order of Supervision ("OSUP"). *See* Dkt. Nos. 1 at 2; 4 at 2–3; 4-1 at 3. Upon release, Petitioner engaged in a pattern of misconduct, including theft of property and failing to report or respond to her deportation officer. *See* Dkt. Nos. 4-2; 4-3; 4-4.[1] On February 27, 2026, ICE re-detained Petitioner, and on March 19, 2026, she was served notice that her OSUP had been revoked on the grounds

[1]In the Petition, Petitioner characterizes these events very differently. But the undisputed evidence contradicts her account. For example, Petitioner asserts that she was wrongfully arrested for theft of property and that the charge against her was dropped. *See* Dkt. No. 1 at 9. In fact, she pled no contest to that charge. *See* Dkt. No. 4-4. In her reply, Petitioner outright ignores the evidence of her misconduct. *See* Dkt. No. 5.

that the purpose of her release had been served, and she had violated the conditions of her release. Dkt. No. 4-2 at 1.

Since Petitioner's re-detention, ICE has begun third-country removal efforts; that is, because Petitioner cannot be removed to El Salvador, the only way to effectuate her removal is to send her to some other country not designated in her final order of removal. *See* Dkt. No. 4-1 at 3. However, according to ICE, Salvadoran "nationals are not being accepted in . . . countries other than Mexico," and Petitioner has established a credible fear "preventing removal to Mexico." *Id.*

## II. LEGAL STANDARD

A district court may issue a writ of habeas corpus when a federal detainee is held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). While many statutory provisions limit judicial review in the immigration context, "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

## III. ANALYSIS

"Once an alien is ordered removed, the Department of Homeland Security ("DHS") must physically remove [her] from the United States within a 90-day 'removal period.'" *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(1)(A)). During the 90-day removal period, detention is mandatory, *see id.* (citing 8 U.S.C. § 1231(a)(2)); however, "[u]pon expiration of the removal period, the Government may continue to detain certain aliens or release them under conditions of supervision," *Abuelhawa v. Noem*, --- F. Supp. 3d ---, 2025 WL 2937692, at *4 (S.D. Tex. Oct. 16, 2025) (citing 8 U.S.C. § 1231). "Although the statute does not specify a time limit on how long DHS may detain an alien in the post-removal period," post-removal detention may last no longer than what is "reasonably necessary to bring about the alien's

removal." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 689). Recognizing that not all reasonably foreseeable removals can be accomplished within the three-month removal period, the Supreme Court has generally held that such detentions are "presumptively reasonable" for up to "six months." *Zadvydas*, 533 U.S. at 701. After that point, release is required if "there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (citation omitted).

However, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 700. Indeed, the applicable regulations provide that "[a]ny alien who has been released under an [OSUP and] violates any of the conditions of release may be returned to custody . . . for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released." 8 C.F.R. § 241.13(i)(1). The problem for Respondents is that Petitioner has been re-detained for more than six months—longer than permitted by the regulations. *See e.g.*, *Tam P. v. Chestnut*, No. 26-CV-6104, 2026 WL 2445028, at *2 (E.D. Cal. Aug. 20, 2026) (determining that, under § 241.13(i)(1), aliens may be detained for an additional six months after violating the terms of their release (citing *Lam v. Noem*, No. 25-CV-3344, 2025 WL 3763372, at *3 (C.D. Cal. Dec. 18, 2025))). Thus, while Petitioner's re-detention may have been appropriate in light of her misconduct, it has now extended beyond the authorized period. The Court therefore proceeds to determine whether Petitioner is entitled to relief under *Zadvydas*.

Respondents argue that Petitioner bears the initial burden of demonstrating "good reason" to believe that removal is unlikely. *See* Dkt. No. 4 at 4–6. Respondents are mistaken. As the Court has repeatedly held, "because this case involves a re-detention based on an OSUP revocation, . . .

it is Respondents' burden to show a significant likelihood that Petitioner may be removed." *See Momin v. Noem*, No. SA-25-CV-1017-OLG, Dkt. No. 19 at 3–4 (W.D. Tex. Jan. 8, 2026) (citation modified). They have failed to meet that burden here.[2]

Respondents assert that they "can show that removal to a third country is, in fact, likely in the reasonably foreseeable future." Dkt. No. 4 at 2. But the record does not support their assertion. Because Petitioner was granted withholding of removal, she cannot be removed to El Salvador, her country of origin. *See* Dkt. No. 4-1 at 3. And Petitioner has a positive credible fear determination with the respect to Mexico, the only third country currently accepting Salvadoran nationals. *Id.* The evidence therefore demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future.

## IV. CONCLUSION

For the foregoing reasons, the Petition (Dkt. No. 1) is **GRANTED** in that Respondents shall **RELEASE** Petitioner under conditions of release—carefully tailored to ensure her appearance and the safety of the community—within **48 hours of the entry of this Order**

This case is **CLOSED**.

**IT IS SO ORDERED**.

**SIGNED** on September 9, 2026.

ORLANDO L. GARCIA
UNITED STATES DISTRICT JUDGE

[2]Even if Petitioner bore the initial burden of proof, she has met that burden. Petitioner asserts that she was granted "withholding of removal to El Salvador," Dkt. No. 1 at 2, making her removal exceptionally unlikely because third-country deportations are notoriously difficult to effectuate, and "foreign governments routinely deny requests to receive people who lack a connection to the would-be receiving country." *Puertas-Mendoza v. Bondi*, No. 25-CV-890, 2025 WL 3142089, at *3–4 (W.D. Tex. Oct. 22, 2025) (citation modified). Furthermore, Petitioner asserts, and Respondents concede, that she has established a credible fear of being removed to Mexico, the only third country currently accepting Salvadoran nationals. *See* Dkt. Nos. 1 at 4; Dkt. No. 4-1 at 3.